UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD M. PARTLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00599-SEB-KMB |
| | ) |
| ALEXHANDER KOENIG, | ) |
| BRUMFIEL, | ) |
| LUNSFORD, | ) |
| RUIZ, | ) |
| DENNIS REAGLE, | ) |
| THOMAS, | ) |
| CHRISTINA CONYERS, | ) |
| | ) |
| Defendants. | ) |

**Order Screening Complaint, Dismissing Deficient Claims,
Denying Motion for Preliminary Injunction, and Directing Further Proceedings**

Plaintiff Edward M. Partlow is a prisoner currently incarcerated at Pendleton Correctional Facility. He filed this civil action complaining that, among other things, he has been the victim of excessive force and retaliation while incarcerated at Pendleton. Because the plaintiff is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). Mr. Partlow also filed a motion for preliminary injunction, dkt. 17, which the Court resolves in this Order.

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020).

Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Partlow names seven defendants in the complaint: (1) Officer Alexhander Koenig; (2) Sergeant Brumfiel; (3) Officer Lunsford; (4) Internal Investigator Ruiz; (5) Warden Dennis Reagle; (6) Officer Thomas; and (7) Christina Conyers, a grievance specialist at Pendleton. He seeks money damages and injunctive relief. His bases his complaint on the following allegations:

### A. Events of January 24, 2023, and Placement in JCH

On January 24, 2023, Internal Investigators Ruiz and Alecia conducted a targeted search of Mr. Partlow's cell. During the search, Investigator Ruiz removed a brace from Mr. Partlow's hand that the medical department had cleared him to wear. The brace was meant to keep Mr. Partlow's bone straight so he could avoid surgery. After Mr. Partlow explained this to Investigator Ruiz, Investigator Ruiz destroyed the brace by removing the internal metal portion meant to keep Mr. Partlow's hand set straight.

Mr. Partlow immediately filed a medical request to get the brace fixed, but he was not seen by a doctor for another week. The doctor said that Mr. Partlow would need surgery because of Investigator Ruiz's actions. Mr. Partlow was given another brace and taken to an outside hospital

for surgery. He had the surgery on February 2, 2023. Surgeons had to re-break Mr. Partlow's hand and set it with screws and two pins.

On January 27, 2023, Mr. Partlow filed a grievance about Investigator Ruiz's actions. Investigator Ruiz then retaliated against Mr. Partlow by planting drugs in his cell and having him removed from a drug treatment program. After that, Mr. Partlow was moved into JCH, which Mr. Partlow characterizes as one of the worst sections of the maximum-security facility where he is housed. This was a problem for Mr. Partlow because he has a degenerative knee disease, walks with a cane, and had a cast on his hand. Investigator Ruiz also had Mr. Partlow deliberately moved to the top tier of his housing unit so that Mr. Partlow would have to walk up and down stairs. Investigator Ruiz knew this would lead to Mr. Partlow receiving conduct reports for tardiness, missing recreation, being late for count letters, and being late for medical appointments.

### B. Events of February 22, 2023

Mr. Partlow consistently complained about another staff member at Pendleton—Officer Koenig. On February 22, 2023, Officer Koenig began harassing Mr. Partlow by telling other inmates about what he believed Mr. Partlow's sexual orientation to be. Officer Koenig also made harassing remarks of a sexual nature to Mr. Partlow. When Mr. Partlow asked for a sergeant, Sergeant Brumfiel arrived. He told Sergeant Brumfiel that he wanted to file a PREA (Prison Rape Elimination Act) report based on Officer Koenig's actions. Sergeant Brumfield then said, "Let's RED TAG him!" Dkt. 1 at 5. Officer Koenig then locked Mr. Partlow in his cell and began telling inmates that Mr. Partlow was a snitch who was trying to check in to protective custody because he had told everyone about Mr. Partlow's sexual orientation. Officer Koenig also let three inmates into Mr. Partlow's tier, even though they did not live there. Those inmates came to Mr. Partlow's cell, asked him if he was a "check in," and tried to intimidate him into giving them items from his

cell. Officer Koenig did nothing to intervene. Another officer arrived and made the inmates leave Mr. Partlow's tier.

Later that day, Mr. Partlow went to a medical appointment. When he got back to the JCH, he saw another inmate waiting at the entrance to his block. He went into another block to avoid confrontation. As he entered that block, Mr. Partlow could hear the inmate said, "The C.O. said you're a check-in!" Dkt. 1 at 6. Mr. Partlow waved the inmate off and started up the stairs. The inmate ran up the stairs in the other block and said something to Officer Koenig. Officer Koenig then opened the gate separating the two blocks and ushered Mr. Partlow through the gate into what Officer Koenig knew was an ambush. While Officer Koenig was walking behind Mr. Partlow on the stairs, the inmate attacked Mr. Partlow. Officer Koenig did nothing to stop the attack. Mr. Partlow then used the minimal force necessary to neutralize the threat posed by the inmate. At that point, Officer Koenig deployed his Taser on Mr. Partlow while Mr. Partlow was standing on a wet, metal surface. He allowed the inmate to continue attacking Mr. Partlow even as he was deploying the Taser on Mr. Partlow. Once the response team arrived, Officer Koenig lifted Mr. Partlow by the shoulder and deployed a chemical agent spray into Mr. Partlow's eyes, nose, and mouth, even though Mr. Partlow was barely conscious and not acting aggressively.

Once Mr. Partlow was taken to the medical department, he was not treated for a stroke or seizures, even though one nurse noted that he was showing symptoms of a stroke. Officer Lunsford, Sergeant Gray, and the nurse then concocted a story that Mr. Partlow admitted he was on drugs and refused treatment. Mr. Partlow alleges that Officer Lunsford acted as he did because he was retaliating against Mr. Partlow for complaining about Officer Koenig.

Upon arrival back at the JCH, Sergeant Gray and Sergeant Brumfiel were told that Mr. Partlow had not been decontaminated. They locked him a shower that only had hot water, even

4

though they were told that hot water re-activates the chemical agent, causing burning and irritation. Mr. Partlow began screaming in pain, convulsing, and vomiting in the shower, but they did nothing. Sergeant Brumfiel even laughed at him.

Mr. Partlow immediately informed Warden Reagle about these events and requested that an order of protection be filed, but nothing was done. Mr. Partlow began filing grievances about the incident, but Ms. Conyers returned them, with a notation that he was requesting inappropriate relief.

Because nothing was done about the situation, Mr. Partlow received about 12 conduct reports from these officers over a 7-to-10-day span. He was placed in a top tier and punished for taking too long to ascend the stairs, even though he has a bottom bunk/bottom range and "no stair pass." He was written up for interfering with staff because he asked to speak to a captain. He was locked in his cell when other inmates were let out, and Sergeant Brumfiel deprived him of lunch and dinner.

Mr. Partlow wrote to the ombudsman on January 24 or 25, 2023, complaining about the actions of these officers. She told him that there was no record that he had ever filed a grievance about these matters. She wrote him a letter on February 1, 2023, that made clear that he had been complaining to her for months about these officers and that Warden Reagle was put on alert of the danger to him but took no action to prevent the events of February 22, 2023.

### C. Events of March 28, 2023

On March 28, 2023, Mr. Partlow tried to go to the law library at 2:00, as authorized by a count letter. Sergeant Brumfiel purposely released him late, knowing that he would not arrive on time because he has physical impairments that make him walk with a visible limp. As a result, he did not arrive to the law library on time, and staff locked the doors while he was en route. Because

there was no intercom or other way for Mr. Partlow to contact law library staff, he went to the gate of the nearest housing unit and asked staff to let the law library know that he was outside the door and needed access. He told staff that he was going to the law library to work on and file a civil rights lawsuit. Officer Lunsford denied Mr. Partlow access to the library by cuffing his visibly broken, cast-covered hand. Officers also pulled and pushed Mr. Partlow so hard that he fell to the ground. Once he fell, Officer Lunsford dropped his knee in Mr. Partlow's upper back at the base of his neck, called him a "check in bitch" and started aggressively pushing his head into the ground. Dt. 1 at 10.

A female officer alerted other staff, and Officer Koenig responded. He accused Mr. Partlow of faking his injuries. He, Sergeant Lunsford, and Officer Thomas refused to call for a wheelchair and wheelchair pusher. Instead, they dragged Mr. Partlow about 150 yards from the education building to the D.O. Building., where he was locked in a dry cell. After being required to release Mr. Partlow from the dry cell, Sergeant Lunsford, Officer Thomas, and Officer Koenig still refused to grant him access to the law library. Officer Thomas said that Mr. Partlow would have to crawl back to the JCH. When Mr. Partlow began crawling, Officer Thomas said he was not moving fast enough, put him in a chokehold, and violently shook him until other officers intervened. Even though Sergeant Lunsford and Officer Koenig were present, they did not report Officer Thomas's actions. Mr. Partlow reported the incident to staff and filed grievance and medical care request forms, but no one responded.

### III. Discussion of Claims

Mr. Partlow states that he is suing under the First and Eighth Amendments to the U.S. Constitution. Where a *pro se* litigant has expressly stated the legal theory he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim

under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Accordingly, the Court addresses the plausibility of Mr. Partlow's claims under the Eighth Amendment and no other theories.

### A. Claims that are Dismissed

#### 1. Access-to-Courts Claims

Mr. Partlow alleges that Officer Koenig, Sergeant Brumfiel, Officer Lunsford, and Officer Thomas violated the First Amendment because they denied him access to the law library. "Prisoners have a fundamental right of access to the courts that prisons must facilitate by providing legal assistance." *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012). At the same time, however, prisoners do not have an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Thus, to prevail on an access-to-courts claim, a prisoner must allege facts plausibly supporting an inference that "he suffered actual injury . . . and that the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (cleaned up). In other words, "the mere denial of access to a prison library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction [or] sentence . . . has this right been denied." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Although Mr. Partlow alleges that he was denied access to the law library, his complaint does not include any allegations plausibly suggesting that such denial has prejudiced a potentially meritorious legal challenge. Accordingly, all access-to-courts claims are **dismissed for failure to state a claim upon which relief may be granted**.

### 2. Claims Based on Interference with Grievance Process

Mr. Partlow alleges that Officer Koenig, Sergeant Brumfiel, and Ms. Conyers violated the First Amendment by blocking his access to the grievance process. He also alleges that Warden Reagle violated the First Amendment by allowing the other defendants to block his access to this grievance process. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). Therefore, any claims based purely on interference with Mr. Partlow's access to the grievance process must be **dismissed for failure to state a claim upon which relief may be granted**.

### 3. Retaliation Claims Against Warden Reagle

Mr. Partlow also alleges that Warden Reagle violated the First Amendment by allowing the other defendants to retaliate against him and intimidate him from filing PREA reports. This claim is actually a First Amendment retaliation claim, which requires Mr. Partlow to allege facts plausibly suggesting that *Warden Reagle* acted as he did out of retaliatory animus. *See DeWalt v. Carter*, 224 F.3d 607, 621 n.7 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (2020) ("[T]o the extent Mr. Carter failed to protect Mr. DeWalt from retaliation, Mr. DeWalt's claim is a retaliation claim requiring him to prove that Mr. Carter purposefully retaliated against him because he exercised a constitutionally protected right . . . ."). Mr. Partlow's complaint includes no such allegations, so these claims must be **dismissed for failure to state a claim upon which relief may be granted**.

### B. Claims that Shall Proceed in this Action

After the dismissed claims are eliminated from the case, three sets of claims remain as potentially viable: (1) claims against Investigator Ruiz based on the events of January 24, 2023,

and Mr. Partlow's subsequent transfer to the JCF ("Ruiz Claims"); (2) claims against Officer Koenig, Sergeant Brumfiel, Officer Lunsford, Ms. Conyers, and Warden Reagle based on the events of February 22, 2023, and the following 7-to-10-day period, including allegations that Mr. Partlow was retaliated against, subjected to excessive force, and forced to live in a cell location that was incompatible with his medical restrictions ("February 2023 Claims"); and (3) claims against Officer Koenig, Officer Lunsford, Officer Thomas, Ms. Conyers, and Warden Reagle based on the events of March 28, 2023, which include allegations that he was retaliated against him for filing grievances and subject to excessive force ("March 2023 Claims").

District courts are encouraged to review complaints to ensure that unrelated claims against different defendants do not proceed in a single lawsuit. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *see also Antoine v. Ramos*, 497 F. App'x 631, 635 (7th Cir. 2012) (stating "district court should have rejected [plaintiff's] attempt to sue 20 defendants in a single lawsuit raising claims unique to some but not all of them") (citing *Wheeler v. Wexford Health Sources*, Inc., 689 F.3d 680, 683 (7th Cir. 2012)); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). A plaintiff is not permitted to treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison Litigation Reform Act's] PLRA's fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies.").

Federal Rules of Civil Procedure 18 and 20 guide this analysis. Federal Rule of Civil Procedure 20(a)(2), permits a plaintiff to join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question

9

of law or fact common to all defendants will arise in the action." "[M]ere overlap between defendants is not enough." *Thompson v. Bukowski*, 812 F. App'x 360, 363 (7th Cir. 2020).

Once Rule 20 is satisfied, "[a] party asserting a claim to relief as an original claim, . . . may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Fed. R. Civ. P. 18(a); *UWM Student Assoc. v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (court must apply Rule 20 before Rule 18). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In the February 2023 and March 2023 Claims, Mr. Partlow alleges that Officer Koenig retaliated against him for asking to file a PREA complaint, failed to protect him from an attack by another inmate, subjected him to excessive force on two occasions, dragged him to the D.O. Building after the events at the law library on March 28, 2023, and failed to protect him from Officer Thomas's assault on that day. He alleges that Officer Lunsford retaliated against him for complaining about Officer Koenig by working with a nurse and another staff member to concoct a story that Mr. Partlow refused treatment after the February 22, 2023, attack, and dragged him to the D.O. Building after the events at the law library on March 28, 2023. He alleges that Sergeant Brumfiel retaliated against Mr. Partlow for complaining about Officer Koenig by red tagging him, locking him in a hot shower while he was contaminated with chemical agent, failing to help him when he screamed in pain, convulsed, and vomited in the shower, and depriving him of meals. **These allegations are sufficient to state First Amendment retaliation and Eighth Amendment claims against Officer Koenig, Officer Lunsford, and Sergeant Brumfield, and they shall proceed in this action.**

In the February and March 2023 Claims, Mr. Partlow also alleges that Ms. Conyers improperly failed to log and respond to his grievances, which resulted in him being housed in harsh conditions after the February 22, 2023, attack, including being deprived of meals and forced to live in a cell that was incompatible with his medical restrictions. In addition, he alleges that Officer Thomas dragged him to the D.O. Building after the events at the law library on March 28, 2023, and then subjected him to excessive force. He alleges that Warden Reagle knew for months before the February 22, 2023, attack that the defendants posed an imminent risk of harm to Mr. Partlow and took no action. Construing the complaint liberally, he also alleges that he told Warden Reagle about the events of February 22, 2023, and asked for an order of protection, but Warden Reagle took no action, which set the stage for the March 28, 2023, attacks. **These allegations are sufficient to state Eighth Amendment claims against Ms. Conyers, Officer Thomas, and Warden Reagle, and they shall proceed in this action.**

These claims were chosen to proceed because they survive the screening requirement of 28 U.S.C. § 1915A and because the Court understands them to constitute Mr. Partlow's principal claims in this suit.

### C. Misjoined Claims

The Ruiz Claims are, however, brought against a different defendant and do not arise from same transaction, occurrence, or series of transactions or occurrences as the February 2023 Claims and the March 2023 Claims. Instead, the Ruiz Claims relate to discrete events that that occurred about a month before the events at issue in the February 2023 Claims and the March 2023 Claims. As a result, the Ruiz Claims are misjoined and cannot proceed in the same lawsuit as the February 2023 Claims and the March 2023 Claims. In such a situation, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. Generally, if a district court finds that a plaintiff has misjoined

parties, the Court should sever those parties or claims, allowing those grievances to continue in spin-off actions, rather than dismiss them. *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

The Ruiz Claims shall either be severed into new actions or dismissed without prejudice. Mr. Partlow controls his complaint and shall be given the opportunity to determine which course is followed. *Myles v. United States,* 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff, for "even *pro se* litigants are masters of their own complaints and may choose who to sue-or not to sue"). If a new action is opened, Mr. Partlow will be responsible for the filing fee associated with the new case. In addition, he will be required to file an amended complaint for the new case, and the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for the new case.

Mr. Partlow shall have **through September 1, 2023,** in which to **notify the Court** whether he wishes the Court to sever the Ruiz Claims into a new action. **If Mr. Partlow fails to so notify the Court by that date, the misjoined claims will be considered abandoned and will be dismissed without prejudice.**

### IV.   Motion for Preliminary Injunction

Mr. Partlow has filed a motion for preliminary injunction. Dkt. 17. He alleges that he was purposely separated from his property and legal materials. He seeks an order requiring his immediate transfer away from Pendleton to Wabash Valley Correctional Facility with access to a law library that he can visit without interference and means to access his property and legal materials. He also seeks an order of protection and replacement of all items of property that were lost. He alleges that, after he filed his complaint, the defendants continued retaliating against him by removing him from his drug treatment program, denying him access to medical treatment,

"placing him around individuals they accused of assaulting plaintiff," denying him law library access, and taking all of his personal property and legal work in violation of Indiana Department of Correction ("IDOC") policy. He alleges that Investigator Ruiz falsely claimed that he trafficked in contraband, which resulted in him being placed in segregation and denied access to his property and legal materials. He complains that, in segregation, he has no access to grooming and hygiene materials, no medical treatment of a mass discovered on his spine, and no fan. He alleges that a transfer order was already submitted and approved, but no action has yet been taken.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

As the Court understands the motion, Mr. Partlow is alleging that the defendants are retaliating against him by "setting him up" on a false charge that he trafficked contraband, which resulted in him being placed in segregation, which in turn resulted in him being removed from his drug treatment program, being denied access to the law library, medical treatment, grooming and hygiene items, a fan, and his property and legal materials. He is also alleging that he was separated from his property in a manner that violates IDOC policy. Finally, the Court also understands Mr. Partlow to be alleging that he has been approved for a transfer, but the transfer has not happened yet.

A district court has no authority to grant injunctive relief unless there is a nexus between the underlying claims and the request for injunctive relief. *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). Here, all of the events that form the basis for the motion for injunctive relief occurred after Mr. Partlow filed his complaint, and there is no nexus between them and the claims proceeding in this case, other than the conclusory allegation that the defendants acted as they did because they were retaliating against him. The Court is not convinced that the fact that a conclusory label of "retaliation" is sufficient to establish the required nexus, particularly given the Prison Litigation Reform Act's ("PLRA") strict requirement that any prisoner bringing a suit with respect to prison conditions under 42 U.S.C. § 1983 or any other law must first exhaust administrative remedies. *See* 28 U.S.C. § 1997e(a). Holding otherwise would allow an inmate who has filed a retaliation lawsuit to circumvent the PLRA's exhaustion requirements every time he takes issue with his conditions of confinement by requesting an injunction in his existing suit and claiming that the new problem resulted from "retaliation." Put another way, "a motion for preliminary injunction is not a proper way to pursue additional claims." *Burgett v. Owings*, Case No. 18-1372-JPG-RJD, 2019 WL 5699054, at *2 (S.D.

14

Ill. Sept. 30, 2019), *report and recommendation adopted by* 2019 WL 5694335 (S.D. Ill. Nov. 9, 2019).

Accordingly, Mr. Partlow's motion for preliminary injunction, dkt. [17], is **denied**.

### V. Summary and Service of Process

As explained above, the following claims shall proceed in this action: (1) First Amendment retaliation and Eighth Amendment claims against Officer Koenig, Sergeant Brumfiel, and Officer Lunsford as set forth in the February 2023 Claims and March 2023 Claims, as defined above; and (2) Eighth Amendment claims against Officer Thomas, Ms. Conyers, and Warden Reagle as set forth in the February 2023 and March 2023 Claims, as defined above. The Ruiz Claims are misjoined. As stated above, Mr. Partlow shall have up to and including **September 1, 2023**, to notify the Court whether he wishes the Court to sever the Ruiz Claims into a new action. If he fails to do so, the misjoined claims will be considered abandoned and dismissed without prejudice.

This summary of claims includes all of the potentially viable claims identified by the Court. All other claims have been **dismissed** for the reasons stated above. If Mr. Partlow believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through September 1, 2023**, to identify those claims.

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendants Koenig, Brumfiel, Lunsford, Thomas, and Conyers, in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction employees electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Date: _____8/9/2023_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

EDWARD M. PARTLOW
110641
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic service to Indiana Department of Correction:
    Alexhander Koenig
    Sergeant Brumfiel
    Officer Lunsford
    Officer Thomas
    Christina Conyers
    Dennis Reagle
    (All at Pendleton Correctional Facility)